## APPEAL OF JANE SMITH, EXRX.

[ESTATE OF JOHN H. MENNS, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT FOR PHILADEL-
PHIA COUNTY.

Argued March 29, 1889—Decided April 8, 1889.

(*a*) A bank held a judgment against one Menns securing an indebted-
ness of $3,200 and the further sum of $3,500, which was the amount of
two notes made by one Smith to the order of Menns and discounted for
the latter by the bank, and for these notes Smith had received from
Menns the latter's notes for the same amount.

(*b*) Subsequently, the wife of Menns paid to the bank $4,000 out of her
own moneys, when the judgment was marked by the bank to her use,
the bank agreeing to look to Smith alone for payment of his notes and
releasing Menns from all liability thereon.

(*c*) Menns dying insolvent, his real estate was sold by his executors, but
the fund realized therefrom was insufficient to pay all the liens against
it, and, at the audit it was claimed on the part of Smith, that as he was
but an accommodation maker of the two notes held by the bank, he was
therefore surety for Menns and as such had an equity in the judgment
assigned to the latter's widow.

1. In such case, as Menns and Smith, each, had received a like considera-
tion for the notes one had issued to the other, to wit, notes for a like
amount, neither had any equity over the other, and Smith was not enti-
tled to an interest in the judgment.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and
MITCHELL, JJ.

No. 123 January Term 1889, Sup. Ct.

On May 16, 1888, the account of Caroline S. Menns, execu-
trix of John H. Menns, deceased, was called for audit before
ASHMAN, J., who on May 18, 1888, filed the following adjudi-
cation:

The testator died March 2, 1886, leaving a will, by which
he gave his entire estate to his wife, Caroline S. Menns, abso-
lutely. He constituted his said wife executrix of his will and
guardian of his minor children. His estate is apparently in-
solvent. The fund for distribution comprises the net proceeds

Adjudication.

of sale of certain of his real estate, and is insufficient to pay the lien debts.

The claim of record first in the order of precedence is that of the Spring Garden National Bank, on a judgment against the decedent in C. P. No. 4 March Term 1884, No. 392, dated May 5, 1884, for $6,700. This judgment was marked to the use of Caroline S. Menns, the widow, and its amount is claimed by her.

The evidence shows that she paid $4,000 of moneys belonging to her separate estate, for the transfer of the judgment. Of this amount she raised $3,500 by mortgaging her own real estate, the title to which was in her long prior to the origin of the debt which was involved in the judgment. The remaining $500, the auditing judge finds, was paid out of the rents of her real estate, consisting of three houses and lots. These rents were paid regularly to her by the collector, and were kept by her in the house or carried on her person. The proof was, that she called upon the holder of the judgment and paid him $500 out of her purse on one day, taking a receipt therefor, and soon afterwards paid him the $3,500, which was identified as the proceeds of the mortgage. It is true that in the purchase by a wife as against her husband's creditors, it must appear not only that the wife had a separate estate, but that she actually applied it to the purchase : Hause v. Gilger, 52 Pa. 412 ; Heath v. Slocum, 115 Pa. 559. That fact is for the jury, and a jury would be justified in finding it in this instance. She may not, however, claim more than she actually paid for the transfer. The husband may have intended that she should become the owner of the entire judgment, but he had no power to give any part of his estate to his wife at a time when he was pressed by creditors and was on the brink of insolvency. This calls up the question as to the distribution of the balance of the judgment.

It is claimed by the bank, the original plaintiff in the judgment. That institution held the judgment to secure an indebtedness of the decedent of $3,200, and the further sum of $3,500, being the amount of two notes of Owen Smith to decedent's order, which the bank had discounted for the decedent. These notes were accommodation notes, but were not known to be such by the bank, at the time they came into its hands.

Adjudication.

They are still unpaid. The bank, certainly, cannot recover in its own right, because on the day it transferred the judgment to the claimant it expressly released the defendant, Menns, from all liability on the notes. The agreement ran as follows:

"Whereas, certain judgments have this day been marked to the use of ——————, and certain notes of mine and on which I am responsible have been surrendered to me and certain settlements and compromises made: now, therefore, in consideration thereof, I hereby agree that the Spring Garden Bank may retain for its own absolute use and benefit two certain promissory notes made by Owen Smith to my order and by me indorsed, one dated March 15, 1884, at ninety days, for $1,000, and one dated March 24, 1884, at thirty days for $2,500; and that in case of failure upon the part of the said bank to recover from the said Owen Smith the said amount of said notes, it is agreed that no recourse shall be had to me for the same, and no claim or demand whatsoever upon said notes shall be made upon me or John H. Menns, Jr.

"In witness whereof, I, the said John H. Menns, have hereunto set my hand and seal, this twenty-ninth day of January, A. D., 1886. JOHN H. MENNS. [SEAL.]

"The above is assented to.

F. W. KENNEDY,

President Spring Garden Bank."

[CORPORATE SEAL.]

It was argued, however, on behalf of Owen Smith, that the bank was bound to claim it for his protection, and that it could not release a security which had enured to his benefit. The answer to this seems to be that Owen Smith had no equity in the matter. When he gave his notes to the decedent he held himself out to all the world as absolutely liable for their payment, and, in·point of fact, the bank did not discover the character of the paper until May 6, 1884, after the decedent's failure. The bank had a perfect right to say to the payee that it was willing to look only to the maker for payment, and this was all that it did when it released the control of the judgment. Owen Smith has not paid the notes and may never be obliged to pay them. Suppose he was subrogated to the bank as plaintiff; he could recover no more than the bank could. But the bank would be met by an estoppel in the order to use,

### Adjudication.

which, as to the bank, was given for a valid consideration. Whatever remedies Owen Smith may have are against the bank alone and not upon this judgment, and those remedies will be available in a suit by the bank when it shall seek to collect the notes.

It was urged against the bona fides of the transaction that the agreement with Menns showed that the order to use had been executed in blank; but this was explained by the fact that counsel was in doubt whether it was not preferable to make the transfer to a trustee, and thereupon the blank was left to permit the appointment of a trustee. Besides that, on December 10, 1885, more than a month before the agreement was signed, the receipt for $500 expressly stipulated that the judgment should be marked to the use of Mrs. Menns. It was also urged that the mortgage of the wife was accompanied by the bond of the husband, and was therefore a mere security for his debt. But this objection was put and answered in Brown v. Pendleton, 60 Pa. 419. Upon the question of the mortgage, Shuster v. Kaiser, 111 Pa. 215, may be referred to, where a purchase by a wife on the credit of her separate estate was upheld against the husband's creditors, although the husband had given his own notes for the unpaid purchase money; and Hagenbuch v. Phillips, 112 Pa. 284, where a married woman's mortgage for the debt of a stranger was held valid.

The judgment it was said was fraudulent, because if the $3,500, the amount of Owen Smith's notes included in it, was not the debt of the husband, the judgment exceeded his indebtedness to the bank; but the bank cannot take advantage of a wrong, if this was a wrong, to which it was itself a party. The objection falls, however, because the widow has been awarded only what she actually paid for the assignment of the judgment.

Judgments of Michael Loeb for $1,300.70 and of Owen Smith for $15,099.22 were also proved.

The auditing judge awarded to Caroline S. Menns $4,000 with interest and costs; to Michael Loeb $1,300.70, with interest and costs; and to Owen Smith $1,113.85 on account of his judgment.

The account was subsequently referred back to the auditing

judge for a rehearing, and additional testimony was submitted on behalf of the claim of Owen Smith. On July 20, 1888, the following re-adjudication was filed:

The account having been referred back for a rehearing, counsel appeared this day for the respective parties. Some additional testimony was submitted on behalf of the claim of Owen Smith, which is referred to below.

The reasons for awarding to the widow no more than the amount actually paid by her for the transfer of the judgment still remain. The decedent had confessed judgment for $6,700 to the bank, and this judgment to the extent of $3,500 was intended to protect the plaintiff from notes of Owen Smith which the defendant had indorsed and the bank had discounted. The bank, by an agreement with the defendant, released him from all liability as indorser upon these notes, and thereby admitted that so much of the judgment was paid. The balance, $3,200, with interest, was all that remained to the bank upon the judgment and was all which it could assign; and the wife of decedent, who stood in the shoes of her assignor, could take no more in the judgment than the assignor possessed. The effect of this release to the husband was to add $3,500 to his estate. Could he make, by paying her the full amount of the judgment, a valid gift of this surplus at a time when he was confessedly insolvent? It is very hard to see how in principle such a transaction differs from any gift of his property by a failing debtor to his wife. Such a gift has always been regarded as a fraud upon creditors.

It was found as a fact by the adjudication that the notes in question of Owen Smith were accommodation notes for the benefit of the decedent. They were so described by the witnesses. But the evidence given at the rehearing put a different phase upon them. The decedent, it was shown, gave his own notes for a corresponding amount to the claimant for the accommodation of the latter; in other words, the parties exchanged their obligations. Owen Smith, therefore, received full consideration for the notes he gave to the decedent. The notes of the latter were not paid at maturity but they were merged in a judgment which the claimant obtained against the decedent. Hence the notes which the bank holds against Owen Smith are his own debt. The bank could have sued the decedent upon

Re-adjudication.

them as indorser, but certainly Owen Smith could not. This the auditing judge thinks disposes of claimant's demand to be subrogated to the bank upon the judgment for $6,700, or upon the part of it which remains after the payment of the widow's interest therein as assignee.

This conclusion is not affected by the evidence at the rehearing to the effect that the bank through its president promised the claimant that if he would pay the two notes it would repay him their amount when the Menns judgment for $6,700 should be collected, or by the further fact that in pursuance of this agreement the claimant actually paid the bank $2,100 on account of the notes. For the failure of the bank to redeem its promise the claimant has his remedy, but it must be had against the bank, and not this decedent, who was no party to the promise. The claimant has admitted the point by filing his bill in equity against the bank alone, in which he sets forth its sale of the judgment against Menns, and asked for relief, not in the shape of a subrogation, but by the surrender to him of his own notes.

For the convenience of counsel who may except hereto, the auditing judge finds that the receipt given by the bank to Mrs. Menns for her payment of $500 was in these words:

"Received, Philadelphia, December 10, 1885, of Mrs. Caroline S. Menns five hundred dollars—thirty-five hundred dollars more to be paid to us within thirty days. Upon the receipt of the full four thousand dollars this bank will mark to the use of Mrs. Menns the judgment it holds against John H. Menns, the bank reserving to itself the notes of Owen Smith, Mrs. Menns to assume all court and judgment costs. $500.

F. W. KENNEDY,
President."

He also finds as a fact, from the testimony of John H. Menns, the younger, that the decedent, before the payment by his wife of $500 on account of the assignment, told her that the judgment was good for $6,700, and would be good as an investment. This witness was the son of Mrs. Menns. His willingness to testify on her behalf was shown by his immediately stating as a fact, what was simply his own inference, that "therefore she mortgaged her own property to raise the money." Assuming that the widow was advised to buy the judgment, and that she

had no actual knowledge that a part of it was to be released to her husband, and assuming, further, that the fraud of her husband, if there was fraud at all, against his creditors, could not involve her interests unless she was a party thereto : Benson v. Maxwell, 12 Cent. R. 690 ; Collins v. Cronin, 117 Pa. 35 ; still she was put upon inquiry by the clause in the receipt to her under which the bank reserved to itself the notes of Owen Smith. If she had asked what that meant she would have learned that its effect was to reduce the judgment which she was buying by $3,500. But she had knowledge. The president of the bank declared, that before he marked the judgment to her use he explained to her that the bank would retain Owen Smith's notes and would release her husband.

To the foregoing adjudication, Jane Smith, executrix of Owen Smith, deceased, filed exceptions, that the auditing judge erred :

1. In not finding that Owen Smith possessed an equity in the said judgment of the Spring Garden Bank against the said John H. Menns, by reason of the said judgment having been confessed for an amount including the amount of the two promissory notes given by the said Owen Smith to the said John H. Menns, aggregating $3,500.

2. In not finding that $3,500 of the amount of the said estate should be awarded to the said Owen Smith on account of his equity in the said judgment.

3. In finding that the said Owen Smith had no equity in the said judgment.

4. In not finding that the Spring Garden Bank was entitled to receive of the said estate the sum of $2,700, being the difference between $4,000 and the amount of the said judgment.

On October 27, 1888, after argument of the foregoing exceptions before the court in banc, HANNA, P. J., they were dismissed and the re-adjudication confirmed. Thereupon the exceptant took this appeal, assigning in several specifications that the court erred in not sustaining the exceptions filed to the re-adjudication.

*Mr. Theodore F. Jenkins*, for the appellant.

Opinion of the Court.

*Mr. Joseph P. McCullen,* for the appellee.

PER CURIAM:

We have examined this record with some care and have been unable to see what equity Owen Smith had in the judgment held by the Spring Garden Bank, and by said bank assigned to Mrs. Menns. The latter purchased the judgment with her own money, and has been allowed in this distribution the amount she paid therefor. It was urged however, that the bank held the judgment in part as security for two notes made by Owen Smith for the accommodation of John H. Menns, the debtor in said judgment; that it was the duty of Menns to take up these notes; and, hence, that Owen Smith had an equity to be protected by the judgment to the extent that it was given to protect the notes. But it appeared there was an exchange of notes between Smith and Menns. Smith holds Menns' notes for the same amount; has recovered judgment, and has been awarded a dividend thereon out of this fund. The equities between Smith and Menns are exactly balanced, or to speak more accurately, neither has any equity whatever. Each received a consideration for the notes he issued to the other, to wit, notes for a similar amount. Had each party paid his notes there would have been no difficulty; it is the insolvency of one of the parties to such a transaction that always makes the trouble. The court below committed no error in holding that Owen Smith had no equity.

The decree is affirmed and the appeal dismissed at the costs of the appellant.